| | |
|---|---|
| HARLEY-DAVIDSON MOTOR COMPANY, INC., | Case No. 2023cv1639 |
| Plaintiff, | **COMPLAINT FOR TRADEMARK COUNTERFEITING, TRADEMARK INFRINGEMENT, TRADEMARK DILUTION, AND UNFAIR COMPETITION** |
| vs. | |
| SHERRON LEGGETT, | |
| Defendant. | |

## COMPLAINT

Plaintiff Harley-Davidson Motor Company, Inc. ( "H-D"), by its undersigned attorneys, brings this action against Sherron Leggett ("Defendant") and alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:

### NATURE OF THE ACTION

1.      This is a civil action for trademark counterfeiting, trademark infringement, trademark dilution, and unfair competition arising under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, Wisconsin state law, and common law. H-D seeks equitable and monetary relief for Defendant's actions that constitute willful violations of H-D's trademark rights in its famous HARLEY-DAVIDSON, HARLEY, H-D, and HD word marks and its Bar & Shield Logos (the "H-D Marks").

2.      H-D is a world-famous manufacturer of motorcycles and offers and sells a wide variety of other products and services. For decades, H-D has used the H-D Marks on and in connection with a wide variety of goods and services, including hats, shirts, and numerous other

apparel products. As courts and the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office have recognized, the H-D Marks have long been famous.

3.    Defendant has misappropriated the H-D Marks to capitalize on H-D's goodwill in those marks and in a manner that is likely to confuse consumers into believing that Defendant is offering genuine H-D goods and services, and/or that Defendant's goods and services are otherwise endorsed or approved by, or otherwise affiliated with, H-D.

4.    Defendant has made, sold, and/or offered for sale numerous counterfeit and/or infringing products, including hats and shirts, bearing exact copies of the H-D Marks. Defendant continues to make, sell, and/or offer for sale other counterfeit and/or infringing products bearing the marks HARLEY FUCKING DAVIDSON and HARLEY FUCKIN DAVIDSON that are confusingly similar to the H-D Marks.

5.    Defendant's unlawful activities infringe the H-D Marks, are likely to dilute and tarnish the H-D Marks, constitute trademark counterfeiting, and constitute unfair competition, among other violations; and have caused and will continue to cause, unless enjoined, irreparable harm to H-D, the H-D Marks, and the consuming public.

6.    H-D seeks injunctive and other relief, including without limitation an injunction enjoining Defendant from engaging in unlawful activities, statutory damages for counterfeiting, Defendant's profits, H-D's actual damages, and H-D's attorneys' fees and costs.

**THE PARTIES**

7.    Plaintiff Harley-Davidson Motor Company, Inc. is a Wisconsin corporation having a principal place of business at 3700 West Juneau Avenue, Milwaukee, Wisconsin 53208, and is the owner of the H-D Marks.

8.    On information and belief, Defendant Sherron Leggett is an individual residing in this District. As discussed below, Defendant's website L1CO.com lists an address of 2041 Jay

2

Eye See, Racine, Wisconsin 53404, and his U.S. Trademark Application No. 97867813 lists his address as 5530 22nd Ave., Kenosha, Wisconsin 53140. Both addresses are located in this District.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1121 (the Lanham Act) and 28 U.S.C. §§ 1331 and 1338(a) and (b) (federal question). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to its federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

10.     This Court has personal jurisdiction over Defendant, and venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because Defendant resides in this District and his activities at issue in this Complaint are directed at consumers in this District and cause harm to Plaintiff in this District. In addition, on information and belief, Defendant's activities about which Plaintiff complains, including his use of the H-D Marks and confusingly similar variations thereof, occurred in substantial part in this District.

## H-D, ITS PRODUCTS AND SERVICES, AND ITS TRADEMARKS

11.     H-D is a world-famous manufacturer of motorcycles and offers and sells a wide variety of other products and services, including apparel products. H-D is the largest U.S. manufacturer of motorcycles.

12.     Founded in 1903, H-D has manufactured, promoted, and sold motorcycles and related products for over 120 years.

13.     H-D owns the exclusive right to use the H-D Marks and variations thereof for motorcycles and various other products and services, including hats, shirts, and other apparel and accessories.

3

14.     Since at least as early as 1903, H-D has used and promoted the HARLEY-DAVIDSON mark for motorcycles, motorcycle parts, and motorcycle accessories.

15.     Since at least as early as 1915, H-D has used the HARLEY-DAVIDSON mark in connection with apparel.

16.     Since at least as early as 1980, H-D has used the HARLEY trademark in connection with motorcycles, motorcycle parts and accessories, motorcycle clothing, and various other products and services. H-D has used the HARLEY mark for many years for hats, shirts, and other apparel and merchandise.

17.     Since at least as early as 1912, H-D has used the H-D and HD marks in connection with motorcycles. H-D has used the HARLEY mark for many years for hats, shirts, and other apparel and merchandise.

18.     The marks HARLEY, H-D, and HD have for many years been used interchangeably by the public as shorthand for HARLEY-DAVIDSON.

19.     Since at least as early as 1910, H-D has used various forms of its distinctive Bar & Shield Logo in connection with motorcycles and related products and services. Since at least 1915, H-D has used the Bar & Shield Logos in connection with apparel. H-D has used the Bar & Shield Logos for many years for hats, shirts, and other apparel and merchandise.  H-D's rights in the Bar & Shield Logos extend to the mark's design (i.e., the bar and shield design), regardless of the wording contained within that design. Representative examples of H-D's Bar & Shield Logos are shown below:

4



20.    H-D has extensively promoted the H-D Marks across H-D's extensive line of products and services over the years.

21.    Apparel is a significant part of H-D's business and has been for many years. For decades, H-D has offered and sold, itself and through its dealers and licensees, apparel and riding gear bearing the H-D Marks, including hats, t-shirts, shirts, sweatshirts, sweaters, pants, vests, and jackets. During this same time, H-D has offered and sold through H-D's licensees a wide range of merchandise bearing the H-D Marks, including many licensees for various apparel products. Representative examples of H-D's apparel products branded with the H-D Marks are shown below:



5





22.     Numerous authorized licensees of H-D in the United States sell and have sold for decades a wide range of merchandise bearing the H-D Marks, including specifically hats, shirts, and other apparel products.

23.     The H-D Marks are premium brands and H-D has a reputation for providing a wide variety of high-quality merchandise under those brands itself and through its dealers and licensees. Given the incredible commercial success of H-D's motorcycle business over the years and its status for many years as a famous, iconic, and cult brand, there has long been a strong demand from motorcycle enthusiasts and the general public for apparel and other products bearing the H-D Marks. Consistent with its image as a premium brand, H-D positions its merchandise branded with the H-D Marks as high-quality merchandise at a premium price point.

24.     H-D has standards and guidelines to which all authorized licensed products branded with the H-D Marks, including hats and shirts, must adhere. These standards and guidelines allow H-D to control the quality and appearance, among other things, of licensed products offered in connection with the H-D Marks.

25.     To ensure and maintain the premium and high-quality reputation of licensed merchandise sold under the H-D Marks, H-D requires its licensees, including its licensees for apparel to comply with its extensive and stringent quality-control standards, including: (1) licensees must first submit product concepts and artwork for H-D's prior written approval,

7

(2) once the concept and artwork is approved, licensees must submit a pre-production product sample for H-D's prior written approval, and (3) once the pre-production product sample is approved, licensees must submit for H-D's prior written approval a production sample of the actual product that will be sold to the public. Licensees cannot promote or advertise any licensed products without completing all of these steps. As part of this quality-control review process, H-D carefully reviews the licensed products in numerous respects, including the materials used in making the licensed products, the quality of the craftsmanship and construction of the products, the design, style, and appearance of the products, and the overall quality of the products.

26.     In addition to the trademark license agreement provisions noted above, H-D has various guidelines in place for reviewing the artwork and other content on licensed products, including without limitation prohibitions against:

- depictions of religious symbols or language from any religion;

- vulgar, crude, or offensive content;

- satanic or excessively violent depictions of skulls;

- display of guns or the word "gun," except in rare instances (e.g. military motorcycles);

- displaying certain of H-D's trademarks on licensed products, including the "corporate" Bar & Shield Logo with the text "HARLEY-DAVIDSON MOTOR COMPANY" that is reserved for corporate use; and

- any modified or mutilated versions of any of H-D's trademarks.

27.     Moreover, all licensed merchandise, including apparel, is subject to H-D's prior written approval before it is manufactured, promoted, and sold to the public by H-D's licensees.

8

28.     H-D and its authorized dealers have earned many billions of dollars from the sale of apparel products and services over the years. In 2022 alone, H-D earned over $270 million from the sale of apparel.

29.     H-D's licensed products business has also been wildly successful, with H-D's royalty revenues from licensing exceeding $39 million in 2022.

30.     H-D currently has approximately six apparel licensees and has had apparel licensees or more for many years.

31.     The H-D Marks have been extensively promoted nationwide across H-D's many product lines. H-D markets and sells motorcycles, motorcycle parts and accessories, and riding gear and other apparel items under the H-D Marks through a network of more than 670 authorized dealers located throughout the country, and through numerous other authorized Harley-Davidson retail outlets, including high-profile and highly trafficked outlets (e.g., stores located at popular airports).

32.     H-D's apparel products are also sold online through its HARLEY-DAVIDSON.COM website, H-D's authorized dealers' websites, and H-D's authorized licensees' websites.

33.     H-D and its authorized dealers and licensees have sold many billions of dollars of products and services under the H-D Marks over the years and have expended many millions of dollars advertising and promoting those marks through virtually every media. For example, H-D has promoted its apparel products under such marks through dealer promotions, catalogs, customer events, industry events, motorcycle-enthusiast events, direct mailings, national television, print, and radio advertisements, and the Internet.

9

34.     For many years, H-D and its dealers have sponsored sports teams and major sporting events, including prominent use of the H-D Marks on advertisements or promotions at such events.

35.     H-D, its products and services, and its H-D Marks have all received significant unsolicited media coverage for decades, including, for example, in national publications such as *Business Week, The Chicago Tribune, The New York Times, The Wall Street Journal, The Washington Post,* and *USA Today,* as well as in books, numerous national television programs and popular online publications and websites, such as MSNBC, CNN, and Yahoo.

36.     As a result of H-D's significant promotional efforts, commercial success, and popularity for decades, the HARLEY-DAVIDSON brand has been ranked annually for the past decade among the top 100 most valuable brands in the world by Interbrand, a leading independent branding firm. In 2019, Interbrand estimated the value of the HARLEY-DAVIDSON brand at US $4.79 billion. In 2020, Tenet Partners ranked the HARLEY-DAVIDSON brand as the 24th Most Powerful Brand in its Top 100 Most Powerful Brands report.

37.     Based on H-D's longstanding and extensive use of the HARLEY-DAVIDSON, HARLEY, H-D, HD, and Bar & Shield Logo marks, and the widespread advertising, publicity, promotion, and substantial sales of products and services under those marks, these marks have been well known and famous to both the general public and the motorcycling public for many years, and they have been recognized as such by various courts and other tribunals.

38.     In *H-D Michigan LLC v. Broehm*, Opposition No. 91177156, the Trademark Trial and Appeal Board of the United States Patent and Trademark Office ("Board") expressly held that the HARLEY-DAVIDSON, HARLEY, and Bar & Shield Logo marks were famous for

motorcycles, apparel, and accessories. 2009 WL 1227921, at *5 (TTAB Apr. 28, 2009) (non-precedential); *see also H-D U.S.A., LLC v. Schmidiger*, Opp. No. 91223860 (T.T.A.B. Feb. 23, 2018) (finding HARLEY-DAVIDSON and HARLEY famous) (non-precedential). Further, the Board held that the Bar & Shield Logo was a famous mark for such products regardless of the wording and other matter displayed within the Bar & Shield Logo. As a result, the Board held that the third-party mark shown below was confusingly similar to the Bar & Shield Logo despite the differences in wording within the logo and despite the changes to the shape of the shield portion of the mark.



39.     Moreover, various federal courts, including the United States District Court for the Eastern District of Wisconsin, have found that the HARLEY-DAVIDSON and HARLEY mark and/or the Bar & Shield Logo are famous, and this Court has also found that the HD and H-D marks are famous. *See H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000 (E.D. Wis. 2018) (finding HARLEY-DAVIDSON, HARLEY, H-D, HD, and the Bar & Shield logo famous); *Ronda Ag v. H-D, Inc.,* 108 F.3d 1393, at *1 (Fed. Cir. 1997) (finding HARLEY-DAVIDSON famous) (non-precedential); *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.,* No. 2:11-CV-00742, 2011 WL 3903278, at *1 (E.D. Wis. Sept. 6, 2011) (finding HARLEY-DAVIDSON and Bar & Shield Logo famous); *Packaging Supplies, Inc. v. H-D, Inc.,* No. 08-CV-400, 2011 WL 1811446, at *2 (N.D. Ill. May 12, 2011) (finding HARLEY-DAVIDSON and Bar & Shield Logo famous); *H-D Michigan, LLC v. Hannon,* No. 09-378-P-S, 2009 WL 3762445, at *1 (D. Me. Oct. 28, 2009) (finding Bar & Shield Logo famous).

11

**H-D'S TRADEMARK REGISTRATIONS**

40.     In addition to its longstanding and strong common-law rights in the HARLEY-

DAVIDSON mark, H-D owns, among others, the following federal registrations for the

HARLEY-DAVIDSON mark:

| Mark | Reg. No. Reg. Date | Goods and Services |
|---|---|---|
| HARLEY-DAVIDSON | 3393840 03-11-2008 | House mark for a full line of clothing, footwear and headwear |
| HARLEY-DAVIDSON | 0507163 03-01-1949 | Motorcycle shirts, sweaters, breeches, neckties, coveralls, rain coats and hats, jackets, helmets, caps and boots |
| HARLEY-DAVIDSON | 1234404 04-12-1983 | Sunglasses and protective helmets for motorcyclists; Clothing-namely, jackets, pants, shirts, T-shirts, vests, jeans, riding suits, bandanas, rain suits, shorts, nightgowns, halters, underwear, tank tops, sweatshirts, night shirts, socks, gloves, hats, caps and boots |
| HARLEY-DAVIDSON | 1450348 08-04-1987 | Bumper stickers, removable tattoos, pressure sensitive decals, mugs, drinking glasses, coasters, decanters, cups, plastic mugs, towels, sweat pants, sweaters, suspenders, scarves, bandanas, leather clothing, namely, jackets, vests, gloves, jeans, chaps, tops, boots, shorts, caps, belts and parts of footwear, namely boot tips; (Among other goods and services in Classes 6, 8, 14, 16, 18, 20, 24, 28, and 34.) |

41.     In addition to its longstanding and strong common-law rights in the HARLEY

mark, H-D owns, among others, the following federal registrations:

| Mark | Reg. No. Reg. Date | Goods and Services |
|---|---|---|
| HARLEY | 1406876 08-26-1986 | Clothing; namely--tee shirts for men, women and children; knit tops for women and girls; and children's shirts |
| HARLEY | 1683455 04-14-1992 | Shirts, tank tops, boots and sweatshirts |

| Mark | Reg. No. Reg. Date | Goods and Services |
|---|---|---|
| | | |
| HARLEY | 1708362 08-18-1992 | Embroidered patches for clothing |

42.     In addition to its longstanding and strong common-law rights in the H-D and HD

marks, H-D owns, among others, the following federal registrations:

| Mark | Reg. No. Reg. Date | Goods and Services |
|---|---|---|
| HD | 2315877 02-08-2000 | Shirts, jackets, vests, t-shirts, nightgowns, sweatshirts, nightshirts, gloves, hats, leather gloves |
| H-D | 1775905 06-08-1993 | Shirts, jackets, vests, t-shirts, nightgowns, sweatshirts, nightshirts, gloves, hats, leather gloves |
| H-D | 1596518 05-15-1990 | Jackets, vests, gloves, t-shirts, and caps |
| H-D | 5032178 08-30-2016 | Online retail store services featuring clothing, clothing accessories, footwear, motorcycle safety equipment, headwear, eyewear, motorcycle parts and accessories, and household items |

43.     In addition to its longstanding and strong common-law rights in its Bar & Shield

Logo, H-D owns, among others, the following federal registrations:

| Mark | Reg. No. Reg. Date | Goods and Services |
|---|---|---|
|  | 3393839 03-11-2008 | House mark for a full line of clothing, footwear and headwear |
|  | 1511060 11-01-1988 | Clothing, namely, boots, sweat shirts, jeans, hats, caps, scarves, motorcycle riding suits, neck ties, shirts, t-shirts, jackets, vest, ladies tops, bandanas |

13

| Mark | Reg. No.<br>Reg. Date | Goods and Services |
|---|---|---|
|  | 1571032<br>12-12-1989 | Clothing, namely, jeans, t-shirts and jackets |
|  | 3185946<br>12-19-2006 | Jackets, baseball hats, caps, shirts and T-shirts |
|  | 1205380<br>08-17-1982 | Motorcycles;<br><br>Clothing-namely, T-shirts |
|  | 1263936<br>01-17-1984 | Mugs and Insulated Drinking Steins;<br><br>Clothing-Namely, T-Shirts, Jackets, Blue Jeans, Sweat Shirts, Underwear, Bandanas, Headwear, Socks, Boots, Cycle Riding Suits, Belts and Suspenders;<br><br>Embroidered patches;<br><br>Posters, paper decals;<br><br>(Among other goods and services in Classes 6, 9, 11, 12, 14, 16, 18, 20, 24, 26, and 34.) |

44.     The federal trademark registrations listed above are prima facie evidence of
H-D's ownership and the validity of those registered trademarks. Further, many of these
registrations are incontestable, and thus constitute conclusive evidence of H-D's exclusive right
to use those marks for the products and/or services specified in those registrations pursuant to 15
U.S.C. §§ 1065 and 1115(b).

45.     H-D also owns the following Wisconsin state trademark registrations for the
HARLEY-DAVIDSON, HARLEY, H-D, HD, and Bar & Shield Logo marks:

| Mark | Reg. Date | Goods and Services |
|------|-----------|--------------------|
| HARLEY-DAVIDSON | 11-18-2009 | Motorcycles, motorcycle parts, jewelry, clothing, caps/headwear, leather goods, decals/stickers, patches, belt buckles, and signs. |
| HARLEY | 11-18-2009 | Motorcycles, motorcycle parts, jewelry, clothing, caps/headwear, leather goods, decals/stickers, patches, belt buckles, and signs. |
| H-D | 11-18-2009 | Motorcycles, motorcycle parts, jewelry, clothing, caps/headwear, leather goods, decals/stickers, patches, belt buckles, and signs. |
| HD | 11-18-2009 | Motorcycles, motorcycle parts, jewelry, clothing, caps/headwear, leather goods, decals/stickers, patches, belt buckles, and signs. |
|  | 11-18-2009 | Motorcycles, motorcycle parts, jewelry, clothing, caps/headwear, leather goods, decals/stickers, patches, belt buckles, and signs. |
|  | 11-18-2009 | Motorcycles, motorcycle parts, jewelry, clothing, caps/headwear, leather goods, decals/stickers, patches, belt buckles, and signs. |

**DEFENDANT'S INFRINGEMENT OF THE H-D MARKS**

46.     Defendant Sherron Leggett has manufactured, marketed, promoted, advertised, offered for sale, sold, printed, distributed, approved of, exercised control over, and/or shipped hats and shirts bearing exact copies of the H-D Marks (the "Infringing Products"), as shown in the representative examples below.

15







47.     In certain instances, Defendant's Infringing Products contain exact copies of designs displayed on genuine H-D products, as shown in the example below.

| Genuine H-D Product | Defendant's Infringing Product |
|---|---|
|  | |

48.     In addition to the Infringing Products shown above, Defendant has manufactured, marketed, promoted, advertised, offered for sale, sold, printed, distributed, approved of, exercised control over, and/or shipped hats and shirts bearing the marks HARLEY FUCKING DAVIDSON and HARLEY FUCKIN DAVIDSON, as shown in the representative examples below.



49.     On such products, the wording HARLEY DAVIDSON appears in a different size from the words FUCKING and FUCKIN, such that HARLEY DAVIDSON creates a separate and distinct commercial impression. Such products are also Infringing Products that infringe H-D's rights in its famous trademarks.

50.     As shown in the images above, Defendant has distributed, offered for sale, and/or sold, at minimum, counterfeit hats bearing H-D's Bar & Shield Logo and HARLEY-DAVIDSON marks and counterfeit shirts bearing the HARLEY-DAVIDSON, H-D, HD, and Bar & Shield Logo marks.

51.     In addition to offering the Infringing Products, on March 31, 2023, Defendant filed an application at the U.S. Patent and Trademark Office for the mark HARLEY FUCKING DAVIDSON with the following identifications of goods and services: "I want to brand and to sell hats caps and t shirts and shoes. I have a printing company as well" (U.S. Trademark Application No. 97867813) ("Defendant's Trademark Application"). Defendant's Trademark Application has not yet been examined.

52.     Defendant's Trademark Application lists Defendant's address as 5530 22nd Ave Kenosha, Wisconsin. Defendant's Trademark Application also lists Defendant's email address and phone number as Leggett78@gmail.com ("Defendant's Email Address") and 262-705-6943 ("Defendant's Phone Number"), respectively.

53.     Defendant offers and has offered the Infringing Products at least from the websites L1CO.com and mikeandnikes.com ("Defendant's Websites"). L1CO.com lists Defendant's Email Address and Defendant's Phone Number as contact information.

54.     Defendant also maintains an Instagram account at https://www.instagram.com/timelessbranding/ ("Defendant's Instagram Account"). Defendant's Instagram Account displays Defendant's name, and links to the mikesandnikes.com domain name (a misspelling of mikeandnikes.com). Defendant's Instagram Account displays Infringing Products, as shown in the image below.



55.     On information and belief, Defendant personally designs and manufactures the Infringing Products. Defendant has maintained the TikTok account at https://www.tiktok.com/@mikeandnikes and the YouTube account at https://www.youtube.com/@doityourself08 (together with Defendant's Instagram Account, "Defendant's Social Media Accounts"). Defendant has posted to Defendant's Social Media Accounts videos of Defendant or a third party designing and manufacturing hats, including some bearing the H-D Marks. Representative screenshots from Defendant's Social Media Accounts are shown below.



56.     On September 20, 2023, H-D, through counsel, sent Defendant a letter requesting, among other things, that Defendant permanently cease his use of the H-D Marks. Although Defendant appears to have removed listings for some of the Infringing Products from Defendant's Websites, he refused to remove listings for products bearing HARLEY FUCKING DAVIDSON and HARLEY FUCKIN DAVIDSON. The latter products still appear on Defendant's Websites. Furthermore, Defendant is still selling Infringing Products bearing HARLEY-DAVIDSON and the Bar & Shield Logo via Facebook Marketplace, as shown in the screenshot below.



**INJURY TO H-D AND THE PUBLIC**

57.    Defendant's actions described above have damaged and irreparably injured and, if permitted to continue, will further damage and injure H-D, the H-D Marks, H-D's reputation and goodwill associated with those marks, H-D's reputation for high-quality products and services, and the public interest in consumers being free from confusion.

58.    Defendant's actions as described above have caused and are likely to continue to cause confusion, mistake, and deception as to the source or origin of the Infringing Products and have falsely suggested and are likely to continue to falsely suggest a sponsorship, connection, license, affiliation, or association between Defendant and/or the Infringing Products with H-D, the H-D Marks, and/or H-D's products and services.

59.    Defendant's actions described above are likely to dilute the distinctiveness of the H-D Marks, and are also likely to tarnish those famous marks, thereby injuring H-D.

60.    H-D has no adequate remedy at law.

61.    Defendant knew or should have known that his activities described above constituted trademark counterfeiting, trademark infringement, trademark dilution, and unfair

competition, and thus Defendant acted knowingly and willfully in reckless disregard of H-D's rights in the H-D Marks.

## FIRST CLAIM FOR RELIEF
### Trademark Counterfeiting Under Section 32(1)
### of the Lanham Act, 15 U.S.C. § 1114(1)

62.     H-D repeats and realleges each and every allegation set forth above.

63.     H-D owns a number of federal trademark registrations for the H-D Marks for various goods and services, many including hats, shirts, and other apparel products.

64.     Without H-D's consent, Defendant intentionally used in commerce the H-D Marks, and/or substantially indistinguishable variations or counterfeits thereof as defined under 15 U.S.C. § 1116(d)(1)(B)(i), in connection with the sale, offering for sale, and/or distribution of at least hats and shirts.

65.     Without H-D's consent, Defendant reproduced, counterfeited, copied, and/or colorably imitated the H-D Marks, and applied such reproductions, counterfeits, copies, and/or colorable imitations to labels, signs, prints, packages, wrappers, receptacles, or advertisements, as defined under 15 U.S.C. § 1116(d)(1)(B)(ii), intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of at least hats and shirts in a manner likely to cause confusion, or to cause mistake, or to deceive.

66.     Defendant's actions described above are likely to cause confusion, mistake, or to deceive as to the origin, sponsorship, or approval of the Infringing Products, Defendant's services, and commercial activities, and thus constitute counterfeiting of H-D's federally registered H-D Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

67.     Defendant is directly, vicariously, and/or contributorily liable for the actions described above.

68.     The actions of Defendant described above have at all times relevant to this action been willful and/or knowing.

69.     As a direct and proximate result of the actions of Defendant as alleged above, H-D has been and will continue to be damaged and irreparably harmed.

70.     H-D has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
## Trademark Infringement Under Section 32(1)
## of the Lanham Act, 15 U.S.C. § 1114(1)

71.     H-D repeats and realleges each and every allegation set forth above.

72.     Defendant used and continues to use in commerce the H-D Marks and reproductions, copies, and colorable imitations thereof in connection with the offering, sale, distribution, and advertising of goods and services, which are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the Infringing Products, Defendant's products or services, and Defendant's commercial activities, and thus constitute infringement of the H-D Marks referred to above in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

73.     Defendant is directly, vicariously, and/or contributorily liable for the actions described above.

74.     The actions of Defendant described above have at all times relevant to this action been willful and/or knowing.

75.     As a direct and proximate result of the actions of Defendant as alleged above, H-D has been and will continue to be damaged and irreparably harmed.

76.     H-D has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF
### Trademark Infringement, False Designation
### of Origin, and Unfair Competition
### Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)

77.     H-D repeats and realleges each and every allegation set forth above.

78.     Defendant's actions described above are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the Infringing Products and Defendant's commercial activities, and thus constitute trademark infringement, false designation of origin, and unfair competition with respect to the H-D Marks in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

79.     Defendant is directly, vicariously, and/or contributorily liable for the actions described above.

80.     The actions of Defendant described above have at all times relevant to this action been willful.

81.     As a direct and proximate result of the actions of Defendant as alleged above, H-D has been and will continue to be damaged and irreparably harmed.

82.     H-D has no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF
### Trademark Dilution Under Section
### 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)

83.     H-D repeats and realleges each and every allegation set forth above.

84.     H-D has engaged in extensive nationwide advertising, promotion, and use of the H-D Marks for many years. Further, H-D has had massive sales of goods and services bearing such marks for decades.

85.     The H-D Marks have for many years received extensive unsolicited media attention nationwide. Such extensive and frequent media attention and commercial success has

25

had a substantial impact on the public and has long created an association in the minds of consumers between H-D and the H-D Marks, such that these marks are famous and were famous nationwide before Defendant commenced his unauthorized use of those marks.

86. Defendant's actions described above, all occurring after the H-D Marks became famous, are likely to cause dilution by blurring and dilution by tarnishment of the distinctive quality of those trademarks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

87. Defendant is directly, vicariously, and/or contributorily liable for the actions described above.

88. The actions of Defendant described above have at all times relevant to this action been willful.

89. As a direct and proximate result of the actions of Defendant as alleged above, H-D has been and will continue to be damaged and irreparably harmed.

90. H-D has no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF
### Trademark Infringement
### Under Wis. Stat. § 132 et. seq.

91. H-D repeats and realleges each and every allegation set forth above.

92. Defendant's actions and/or the actions of others acting on behalf of or with Defendant's authorization or knowledge making use of the H-D Marks with intent to deceive as to the affiliation, connection, or association of Defendant with H-D in the conduct of his business without the authorization of H-D as set forth above constitutes statutory trademark infringement of the Wisconsin-registered H-D Marks identified above in violation of Chapter 132 of the Wisconsin Statutes.

93.    The actions of Defendant and/or the actions of others acting on behalf of or with Defendant's authorization or knowledge described above have at all times relevant to this action been willful.

94.    Defendant is directly, vicariously, and/or contributorily liable for the actions described above.

95.    As a direct and proximate result of the actions of Defendant as alleged above, H-D has been and will continue to be damaged and irreparably harmed.

96.    H-D has no adequate remedy at law.

### SIXTH CLAIM FOR RELIEF
### Common Law Trademark Infringement, Unfair
### Competition, and Misappropriation

97.    H-D repeats and realleges each and every allegation set forth above.

98.    Defendant's actions described above with respect to the H-D Marks constitute common law trademark infringement, unfair competition, and misappropriation of H-D's goodwill under the common law.

99.    Defendant is directly, vicariously, and/or contributorily liable for the actions described above.

100.    The actions of Defendant described above have at all times relevant to this action been willful.

101.    As a direct and proximate result of the actions of Defendant as alleged above, H-D has been and will continue to be damaged and irreparably harmed.

102.    H-D has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, H-D prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

27

A.     An injunction preliminarily and permanently enjoining Defendant and his employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, retailers, wholesalers, manufacturers, vendors (including without limitation ISPs, printers, and order fulfillment and shipping vendors), successors, assigns, sellers of products on any and all websites and social media pages owned, operated, or controlled by Defendant, and all other persons in active concert or participation with any of them:

1.     From using, displaying, and/or registering the H-D Marks in any form, manner, or medium including but not limited to in connection with any other wording or designs, and from using any other marks, logos, designs, designations, or indicators that are confusingly similar to any of the H-D Marks, or likely to dilute the distinctiveness of or tarnish any of the H-D Marks, in any unauthorized manner including, but not limited to: (a) use on or in connection with any products of any type in any online or offline context, including without limitation the Infringing Products, Defendant's Websites and any other online venue; (b) on any designs to be applied to products, including without limitation all artwork, transparencies, negatives, dies, tooling, molds, screens, disks, and other materials; (c) on any packaging, containers, tags, labels, product inserts, order documents, shipping documents, and invoices associated or used with any of the items in subparts (a) and (b) above; (d) any other websites or online platforms including social media and apps, promotional and advertising materials, store names, signage, and product packaging and labeling; and (e) as or as part of any trademarks, business names, corporate names, store names, seller names on Defendant's Websites, product names on Defendant's Websites, domain names, e-mail addresses, URLs, metatags, metadata,

screen names, social media names, keywords such as advertising keywords, or any other names or identifiers;

2. From using or displaying in any form or manner any images or pictures of the Infringing Products including, but not limited to, use and display in any advertising, marketing, and promotional materials, on Defendant's Websites, on any other online or offline venue used to display, advertise, market, or promote the Infringing Products;

3. From fulfilling any orders for any Infringing Products at any time;

4. From making any unauthorized use or display of the H-D Marks and any other trademarks of H-D or confusingly similar marks in any form, manner, or medium in any advertising, promotional, or marketing of the Infringing Products or other products or services, including on Defendant's Websites, on or in any advertisements, promotional materials, advertising materials, catalogs, brochures, flyers, coupons, giveaway items, third-party websites, social media sites, store names, names of sellers on Defendant's Websites, and signage;

5. From representing by any means whatsoever, directly or indirectly, that Defendant or any products or services offered by Defendant, including without limitation the Infringing Products, or any activities undertaken by Defendant, emanate from H-D, or are authorized, licensed, or otherwise affiliated with or sponsored or endorsed by H-D; and

6. From assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs A.1-5 above.

B. An Order directing Defendant to destroy all products and items in his possession or under his control that bear the H-D Marks, including without limitation any Infringing

Products and all items bearing the H-D Marks, and to confirm such destruction in writing to H-D, and to provide to H-D the identity and complete contact information and payee information for all persons and entities that made, produced, advertised, sold, or designed the Infringing Products including, but not limited to, sellers, manufacturers, printers, shipping vendors, wholesalers, distributors, retailers and all others that assisted or enabled Defendant to make, advertise, promote, sell, distribute, and transport the Infringing Products.

C.      An Order requiring Defendant to pay H-D the cost for corrective advertising and/or to engage in corrective advertising in a manner directed by the Court.

D.      An Order directing Defendant to file with this Court and serve on H-D's attorneys, thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which they have complied with the injunction and other orders issued by the Court.

E.      An Order requiring Defendant to pay statutory damages in accordance with 15 U.S.C. § 1117(c) of $2,000,000 per mark per type of product or service sold, offered for sale, or distributed by Defendant bearing marks deemed to be willful counterfeits of the H-D Marks;

F.      An Order requiring Defendant to account for and pay to H-D any and all profits arising from the foregoing acts of counterfeiting, infringement, dilution, false designation of origin, and unfair competition, and an increasing of such profits for payment to H-D in accordance with 15 U.S.C. § 1117, and other applicable statutes and laws;

G.      An Order requiring Defendant to pay H-D compensatory damages in an amount as yet undetermined caused by the foregoing acts of counterfeiting, infringement, dilution, false designation of origin, unfair competition, and trebling such compensatory damages for payment to H-D in accordance with 15 U.S.C. § 1117, and other applicable statutes and laws;

H.     An Order requiring Defendant to pay H-D punitive damages in an amount as yet undetermined caused by the foregoing acts of Defendant;

I.     An Order requiring Defendant to pay H-D's costs and attorney's fees in this action pursuant to 15 U.S.C. § 1117, and other applicable statutes and laws; and

J.     Other relief as the Court may deem appropriate.

Dated: December 6, 2023

By: *s/Jennifer L. Gregor* _____
Jennifer L. Gregor, SBN 1078174
Emma J. Jewell, SBN 1104663
GODFREY & KAHN, S.C.
One East Main Street
Madison, WI 53703
PH: 608-257-3911
FX: 608-257-0609
Email: JGregor@gklaw.com

833 East Michigan Street, Suite 1800
Milwaukee, WI 53202-5615
Phone:  414-273-3500
Fax:  414-273-5198
Email:  ejewell@gklaw.com

David M. Kelly (WIED Bar No. 409718)
Saul Cohen (*pro hac vice* forthcoming)
KELLY IP, LLP
1300 19th Street, N.W., Suite 420
Washington, D.C. 20036
Telephone: (202) 808-3570
Email: david.kelly@kelly-ip.com
saul.cohen@kelly-ip.com

*Attorneys for Plaintiff HARLEY-DAVIDSON MOTOR COMPANY, INC.*

30338336.1